[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an appeal by the plaintiffs from the CT Page 4513 assessment of damages made by the defendant for the taking of their property in the Towns of Manchester and South Windsor as shown on a map entitled: "TOWNS OF MANCHESTER AND SOUTH WINDSOR MAP SHOWING LAND ACQUIRED FROM STUART A. GRISEL et al BY THE STATE OF CONNECTICUT INTERSTATE ROUTE 291 (LIMITED ACCESS HIGHWAY) SCALE 1" = 40' MAY 1, 1990 ROBERT W. GUBALA TRANSPORTATION CHIEF ENGINEER — BUREAU OF HIGHWAYS." A copy of this map was introduced into evidence by agreement as Exhibit 1. The property was also described in Schedule A appended to the complaint.
At the trial of this matter, the parties stipulated that the date of the take was February 22, 1991, that damages were assessed by the defendant in the sum of $500.00, and that the sum of $500.00 has been deposited with the Clerk of the Superior Court and has not been withdrawn by the plaintiffs. Introduced into evidence by agreement of the parties were the following exhibits;
Exhibit A, plaintiffs' appraiser's report;
Exhibit B, map before take;
Exhibit C, map after take;
Exhibit 2, defendant's appraiser's report.
The subject property is a triangular shaped piece of wooded land consisting of .585 acres, more or less, lying on the northerly side of Burnham Street in Manchester. It has 145.59 feet, more or less, of frontage on Burnham Street and is undeveloped land. Electric and telephone services are available from Burnham Street. A sewer line in Burnham Street does not extend as far east as the subject property. The property is located in two towns, the southerly 0.17 of an acre, more or less, fronting on Burnham Street lying in Manchester, and the northerly 0.42 of an acre, more or less, lying in South Windsor. Land lying to the south of Burnham Street is in the Town of East Hartford and permission must be obtained from East Hartford authorities in order to make a curb cut on Burnham Street. The land slopes upward from west to east CT Page 4514 and is about level with Burnham Street. The Connecticut Light and Power Company owns land bordering the subject property on the west.
The subject property, situated as it is partly in one town and partly in another, also lies in different zones. The portion of the property which is in Manchester is in a Rural Residential zone, while the portion of the property which is in South Windsor is in an Industrial zone. To the west of the subject property, on the south side of Burnham Street in East Hartford, there has been residential development. To the east of the subject property, on the south side of Burnham Street in Manchester, there has been industrial and office use development. Some distance northerly of the subject property is Chapel Road in South Windsor. Areas north of Chapel Road have been developed for residential uses.
The minimum lot size permitted in the Manchester Rural Residential zone is 30,000 square feet. The minimum lot size permitted in the South Windsor Industrial zone is 20,000 square feet. Thus, with respect to land area the portions of the subject property lying in Manchester and in South Windsor do not conform to zoning. The portion of the subject property lying in Manchester lacks the 150 feet of frontage required in a Rural Residential zone. The portion of the subject property lying in South Windsor has access to Burnham Street only over the portion of the subject property lying in Manchester. South Windsor does not permit interior lots in an Industrial zone. The subject property is taken in connection with the extension of Interstate Route 291 from Route 5 in the western part of South Windsor through South Windsor to Interstate Route 84 in Manchester.
Glenn Chalder, a qualified real estate development planner, testified for the plaintiffs. He is associated with Amadon and Associates, a real estate appraisal firm. Chalder opined that it was reasonable to think that the zoning authorities in Manchester would have granted an application for change of zone from Rural Residential to Industrial before the take. He concluded that the highest and best use for the subject parcel before the take therefore was for industrial development. He developed a schematic drawing of a 3,600 square foot industrial building with eight parking spaces which in his opinion would be the reasonable development potential of the subject property.
Dean C. Amadon, a qualified real estate appraiser, CT Page 4515 was also called as an expert witness by the plaintiffs. Amadon opined that, while it was difficult because of the different zones and towns and because of the topography, to determine highest and best use of the subject property, industrial use would be appropriate. He concluded that the highest and best use was for industrial development. He used the direct sales comparison approach to value. Amadon investigated sales of land on which an industrial building had been approved and, in some cases built. He identified eight sales which he considered comparable and evaluated them on the basis of the price paid per square foot of building. After making adjustments for such factors as the value of development approval, time and location of sale, and physical and development characteristics of the sites, Amadon concluded that the subject property had a fair market value at the date of the take of $10.00 per square foot of building. Using a 3,600 square foot building as the reasonable development potential, Amadon estimated the fair market value of the subject property at the date of the take to be $36,000. The defendant called Kay A. Molochko, a qualified real estate appraiser, as an expert witness. Molochko opined that the subject property was undevelopable. She concluded that because the portion of the subject property lying in Manchester did not conform to Manchester residential zone requirements and the portion of the subject property lying in South Windsor did not meet the requirements for industrial development in South Windsor, the highest and best use of the subject property was for assemblage with an abutting property. Molochko opined that it was unlikely that an application for change of zone would be granted and that the subject property had little use except as an open parcel with nominal value. She also used the direct sales comparison approach to value. She compared the subject to three sales, each of which conformed to zoning. Two of the sales were in residential zones and one was in an industrial zone. After making adjustments for the lack of zoning conformity, size, shape and location, Molochko concluded that the subject property had a fair market value before the take of $0.02 per square foot of land. Using 25,483 square feet of land, she concluded that the fair market value of the subject property on the date of the take was $500.00.
Potential for development of the subject property before the take is difficult to assess because no attempt had ever been made to investigate and obtain the zone change and other permits and approvals which would have been necessary. The major portion of the subject property CT Page 4516 was in an industrial zone and it is reasonably probable in light of the industrial development in the Town of Manchester to the east of the subject property on the south side of Burnham Street that an application for change to an Industrial zone would have been approved by the Town of Manchester. It is likely that all necessary approvals and permits could have been obtained for development of an office building once all of the subject property had been zoned for industrial use.
Having seen the subject property, and having given full consideration to all of the testimony of the witnesses and to all of the evidence offered by the parties, and relying upon my own knowledge of the elements constituting value, I have concluded that the damages sustained by the plaintiffs are $12,000. Judgment may enter for the plaintiffs for the further sum of $11,500 in addition to the sum of $500.00 which was deposited with the Clerk of the Superior Court, with interest on said further sum from the date of taking to the date of payment together with costs. No allowance is made towards appraisal fees because an allowance was made for the same appraisal report in CV 91 0500240 Johnson v. State of Connecticut, Department of Transportation.
GEORGE D. STOUGHTON STATE TRIAL REFEREE